## MAJESTIC IRON WORKS, Inc., v. KINNEAR MFG. CO.

## KINNEAR MFG. CO. v. MAJESTIC IRON WORKS, Inc.

### Nos. 4298, 4299.

Circuit Court of Appeals, Seventh Circuit.

Dec. 3, 1930.

J. V. De Laney, of Chicago, Ill., for Majestic Iron Works, Inc.

George L. Wilkinson and Milton T. Miller, both of Chicago, Ill., and George M. Finckel, of Columbus, Ohio, for Kinnear Mfg. Co.

Before ALSCHULER, SPARKS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge.

The Kinnear Manufacturing Company, herein called plaintiff, brought its complaint against Majestic Iron Works, Inc., called defendant, alleging infringement of plaintiff's two United States patents to McCloud, No. 1,074,187, September 30, 1913, for "means for releasing the fastenings of metallic parts

in case of fire," and No. 1,014,315, January 9, 1912, for "fire-resisting curtain." The decree found the first named patent valid and infringed, awarding plaintiff injunction and accounting, and directed dismissal of the bill as to the second. Each party appeals.

Both patents are in the art of fire-resisting curtains composed of interlocking or hinged horizontal metal strips, raised and lowered by means of a roller at the top, and having grooved or channeled bars or guides at the sides of the opening, into which the sides of the curtain project, so that the curtain may be held in close contact over the opening. By automatically unrolling and descending in case of fire, the curtain closes to prevent the fire passing through the opening.

█ The first patent deals only with the mode of fastening together the metal members which form the side channels, and the advance claimed for it is that in case great heat is applied there may be longitudinal expansion of the most exposed bar of the channel without its buckling.

There was evidence to indicate that if bars forming the channel were rigidly bolted together in the ordinary way, then, in case one became extremely heated and caused to expand, the member tightly held by its bolts might buckle and permit the fire to pass around the edges of the curtain through the opening which it guarded.

It seems that some time previously the same inventor sought to meet this supposed problem by slotting the bolt holes, so that in case of expansion the bolts might move in the slots and thus avoid buckling. The device is shown in patent to McCloud, No. 869,-447, October, 1907. But it was testified that in practice the bolts were often drawn so tightly as to prevent their movement in the slots, and that thus the slotting of the bolt holes might not serve to prevent the buckling.

In the device of this patent in issue slotted or enlarged bolt holes are retained and become one of the elements of the patented structure; but there is provided a thin washer interposed next to the bolt head or the nut, consisting of metal or other substance, which washer will be fused or disintegrated as the member becomes heated, with the effect that the grip of the bolt is sufficiently released to permit one of the members, in case high degree of heat is applied, to expand without tendency to buckle.

We are of opinion that there was thus achieved some advance toward making these channels more efficacious, and that in so equipping the channels there was involved invention, perhaps not of the highest order, but in our judgment sufficient to sustain the patent as against the charge of invalidity for lack of invention.

Defendant, although using in all or some of its curtain channels a destructible washer, in connection with slotted or enlarged bolt holes, as in the patent, maintains it does not infringe because its washers are not of fusible metal, but of a fibrous material and not readily destroyed by heat. The washers of the patent are not limited to fusible metal. Indeed, while metal is mentioned in the specification, the claims refer to washers of a material which would be disintegrated or deformed by a rise of temperature. This would include any of the many substances adaptable for such use. We are satisfied from the record that the washers used by defendant were destructible or deformable by a degree of temperature whereby they would be destroyed before there could be any substantial expansion of the channel members, and would thus tend to prevent buckling of a highly heated channel member.

Defendant further contends that its channels are so constructed that they would not buckle in any event, and that the washer it uses serves no useful purpose whatever, but was used only because the fire insurance Underwriters' Laboratories had approved them and there was some decrease in insurance premium rates if they were employed. A good-faith recommendation of their use from such a source might tend to indicate their utility, but would hardly excuse another's appropriation of the patent. Nor are we satisfied from the record that they have no utility in defendant's channels. These would surely expand longitudinally if subjected to very high degree of heat; and, whatever their situation, the relaxation of the gripping bolts would have some tendency to prevent buckling that might otherwise occur if the bolts maintained their original grip upon the parts, and the bolt holes were not slotted or enlarged.

█ The second patent is directed to the positive holding of the curtain when it is lowered.

In practice, such curtains roll on heavy spring rollers at the top, from which the curtains, when lowered, hang suspended. The patent consists in enlarging the hinging device at each end of one of the metal slats or curtain sections, near the top of the curtain, so that, when the curtain is lowered, the enlarged hinging elements cannot pass into the channels. The curtain when down is thus positively held by contact on each side with

the upper end of the channels, and its suspension in proper place is not dependent upon the spring roller above.

There was evidence to indicate that in case of a very hot fire there was tendency of the roller to warp and thus cause a bend in the curtain whereby fire might pass over it into and through the opening which it should cover. We cannot see why the roller would be any more subject to this bending from extreme heat than the slats themselves, including the very one which by means of the enlargements at its ends thus positively holds the curtain suspended. But, assuming there is advantage in providing this positive suspension of the curtain so that it can descend no farther, we cannot see wherein the enlargement of these hinge members on ends of one of the slats, to prevent further descent of the curtain, involves any degree of invention. It is a most simple expedient, which would most likely occur to any one of ordinary mechanical skill if its employment were deemed to be of advantage, which is more or less doubtful. We are of opinion that this patent must fall because lacking in inventive merit.

The decree is affirmed.